FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 16  P 2:30

LORETTA G. WHYTE
       CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BLANCHARD AND COMPANY, INC., ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 02-3721 c/w 04-2610** |
| **BARRICK GOLD CORPORATION, ET AL** | **SECTION "C"** |

## ORDER AND REASONS

Before the Court are cross motions for summary judgment (Rec. Docs. 553 & 571) pertaining to the contract claims filed by Intervenors Jones, Verras, Freiberg, L.L.C. and Gladstone N. Jones, III (collectively "JVF") on April 25, 2005 (Rec. Doc. 485). The initial motions concern one issue: whether JVF is entitled to the "bonus fee" discussed in the "Injunction Phase" section of the fee agreement between Blanchard & Company, Inc. ("Blanchard") and JVF, which JVF valued at $398,037.37. Each side contends that that the contract is clear and should be interpreted in its favor as a matter of

1

law. As the Court pronounced at oral argument on February 1, 2006, the Court finds the language of the contract is unambiguous and JVF is not entitled to the bonus fee. Accordingly, JVF's summary judgment motion (Rec. Doc. 553) is **DENIED** and Blanchard's motion (Rec. Doc. 571) is **GRANTED.**

At the close of oral argument, after the Court ruled in Blanchard's favor regarding the interpretation of the bonus fee provision, counsel for JVF asserted that "We still have a claim for quantum meruit out there." (Transcript, February 1, 2006, p. 14, ll. 23-24). Because none of the parties had expressly addressed that issue in any of the motions argued at the February 1, 2006 hearing, the Court took all motions under advisement and invited further briefing in order to determine whether any claims in fact remained outstanding in this case. See Rec. Doc. 608. After reviewing the materials submitted by the parties, the Court finds that any potential *quantum meruit* claim that may have existed was settled by the parties' Receipt and Release Agreement ("RRA") signed in June 2004. That reasoning will be dealt with at the end of this opinion.

II. Background

JVF represented ("Blanchard") for a period of time in its original antitrust suit against defendants Barrick Gold Corporation ("Barrick"), J.P. Morgan Chase and Co. ("Morgan") and ABC Companies (collectively "Defendants"). JVF worked on the antitrust matter until withdrawing from the case on September 16, 2003 "at the behest of [Blanchard]." (Rec. Doc. 485). After JVF's withdrawal from the case, a dispute arose between JVF and Blanchard regarding payment for JVF's services in representing

2

Blanchard. JVF subsequently intervened as of right under Federal Rule of Civil Procedure 24(a)(2) in order to protect its purported remaining financial interest in the case arising out of bonus fee and contingency fee arrangements as set forth in JVF's original fee agreement ("Fee agreement," "agreement," or "contract") with Blanchard. After intervening, and while the underlying antitrust matter between Blanchard and the defendants moved forward, JVF filed a complaint against Blanchard and each of the defendants on April 25, 2005. (Rec. Doc. 485.) JVF was seeking a judgment that it was entitled to remuneration under its contract with Blanchard as well as a privilege on potential future payments from the defendants to Blanchard stemming from a judgment or other resolution of the underlying antitrust matter. Blanchard, with new counsel, subsequently settled its claims in the underlying antitrust suit with each of the defendants. (See Rec. Doc. 518, June 7, 2005, Order Granting Motion to Dismiss Claims Against J.P. Morgan; Rec. Doc. 548, November 14, 2005, Order Granting Motion to Dismiss Claims Against Barrick). Thus, all that remains of the original antitrust suit is the contract claim filed by JVF on April 25, 2005, including the subsequently argued claim for *quantum meruit* remuneration.

III. Law and Analysis

The original summary judgment motions concern the interpretation of the following contractual provision ("Bonus fee provision"):

> Jones, Verras & Freiberg, LLC ("JVF") will be paid a bonus fee equal to
> the fees paid by Blanchard to the date of the granting of the permanent
> injunction, which injunction must mirror the injunctive relief prayed for or

3

a modification thereof agreed to by Blanchard and JVF. (Blanchard ex. 6, revised fee agreement).

JVF argues that the language of that provision should be interpreted to mean that Blanchard's settlements with Morgan and Barrick entitle JVF to the value of the bonus fee. Specifically, it claims that the words "or a modification thereof" indicate that the parties intended that a private, out-of-court settlement would trigger JVF's entitlement to the fee. Blanchard argues that only some form of court-ordered injunction satisfies the condition set forth in the bonus fee provision.

Summary judgment is appropriately granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is not a genuine issue for trial." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Under Louisiana law, courts are required to "give legal effect to the true intent of the parties." <u>Borden v. Gulf States Utilities Co.</u> 543 So.2d 924, 927 (La.App. 1 Cir. 1989). Courts look first to the language of the contract to determine the parties' intent. Upon determining that "the words of a contract are clear and explicit and lead to no absurd circumstances, no further interpretation may be made in search of the parties'

4

intent." La. Civil Code art. 2046. In Louisiana, "a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." Davis Oil Co. v. TS, Inc., 145 F.3d 305, 308 (5th Cir.1998) (quoting Lloyds of London v. Transcontinental Gas Pipe Line Corp., 101 F.3d 425, 429 (5th Cir.1996)). The determination as to whether or not a contract is ambiguous is a question of law. Borden, Inc. 543 So.2d at 928. Accordingly, "when a contract can be interpreted from the four corners of the instrument, the question of contractual interpretation is answered as a matter of law, and summary judgment is appropriate." Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317, 837 So.2d 11, 13 (La.App. 1 Cir. 2002); See also, Gertler v. City of New Orleans, 881 So.2d 792 (La.App. 4 Cir. 2004).

When a contract is unambiguous, JVF is correct that the court generally is not to consider extrinsic evidence to aid in the interpretation of the agreement. See, e.g., In re Liljeberg Enterprises, Inc. 304 F.3d 410, 439 (5th Cir. 2002) ("[W]here the words of a contract are clear and explicit and lead to no absurd consequences, the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence."); Ortego v. La. Dep't of Transp. & Dev., 689 So.2d 1358, 1363 (La. 1997) ("[T]he meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the instrument's four corners, and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms.") Nonetheless, as the following analysis demonstrates, it is unnecessary to examine the extrinsic evidence in this case to discern the parties'

intents. It is clear from the plain language of the contract and its structure that a settlement was never intended to trigger the entitlement of the bonus fee.[1]

A common-sense reading of the contractual language by itself strongly indicates that only some form of an injunction could trigger the bonus fee. The repetition of the word "injunction," as emphasized in the following quotation of the *bonus provision*, suggests that the parties intended that an injunction – either as initially prayed for or as modified – would be the only form of relief that would trigger the bonus fee:

> Jones, Verras & Freiberg, LLC ("JVF") will be paid a bonus fee equal to the fees paid by Blanchard to the date of the granting of the permanent injunction, **which injunction** must mirror the **injunctive** relief prayed for or a modification thereof agreed to by Blanchard and JVF. (Blanchard ex. 6, revised fee agreement).

A standard grammatical reading of the above language recognizes that everything following the repetition of the word "injunction" refers to and modifies "injunction." Specifically, the words "modification thereof," which appear later in the same dependent clause, refer to the term "injunction." Consider, for example, the somewhat different flavor of the following hypothetical bonus fee provision that does not include the second and third references to an "injunction":

> Jones, Verras & Freiberg, LLC ("JVF") will be paid a bonus fee equal to the fees paid by Blanchard to the date of the granting of the permanent injunction, which must mirror the relief prayed for or a modification thereof agreed to by Blanchard and JVF.

Under the hypothetical language, it would be conceivable that "modification thereof" referred to "the relief prayed for" as opposed to "injunction" specifically. In the contract as written, however, if, as JVF contests, the word "modification" was meant to refer to a

---

[1] JVF filed a Motion to Strike Extrinsic Evidence Submitted in Blanchard's Cross-Motion for Summary Judgment and All Related References, Statements, and Arguments (Rec. Doc. 577). That motion is **DISMISSED AS MOOT**.

6

modification of the form of relief prayed for in a general sense, as opposed to an injunction specifically, then the repetition of the word injunction would be rendered superfluous.

Furthermore, standard rules of construction dictate that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civil Code art. 2050. In this case, the Court must therefore read the bonus provision in light of both the structure of the contract in general, as well as the specific language that appears in other parts of the document. Structurally speaking, the contract is divided into three different "phases" each of which establishes a different fee arrangement. The bonus fee provision appears *only* in the section entitled the "Blanchard injunction phase."

More significantly, the absence of the word "settlement" in the injunction phase section is significant considering that the section entitled "Blanchard damage phase" uses the word "settlement" when discussing fee arrangements in the event of a "settlement" in the case: "When a final non-appealable judgment in favor of Blanchard is granted *or Blanchard and JVF approve a settlement of the case....*" (Blanchard ex. 6, revised fee agreement). In arguing that the word "modification" encompasses the notion of settlement, JVF points to the fact that an alternative definition of the word "modification" in Webster's dictionary uses the word "settlement." But the fact that the contract specifically used the word "settlement" when it meant "settlement" in the damage section of the contract dramatically undercuts that argument. If the parties intended for the bonus fee to apply in the event of a "settlement" as well as injunctions, the damage section of

7

the contract demonstrates that the parties certainly knew how to use the appropriate language.

Finally, the practical implications of JVF's interpretation make their construction far-fetched. As Blanchard points out, under JVF's interpretation, "if a settlement is reached without the grant of an injunction but with the payment of damages to Blanchard and the class," JVF would be entitled to the bonus fee in addition to the contingency fees. (Blanchard Memorandum, Rec. Doc. 571, 10). Indeed, it seems conceivable under JVF's interpretation that a court could *deny* issuing an injunction, and yet JVF would still recover a bonus if the parties later settled; a relatively absurd outcome for a provision that seems intended on its face to incentivize the lawyer to obtain an injunction. Simply put, it is hard to imagine that when sophisticated attorneys used the word "injunction" – a relatively significant court-ordered remedy – that term was meant to include the possibility of a private out-of-court settlement.

Accordingly, Blanchard Motion for summary judgment is **GRANTED** and JVF's motion is **DENIED.**

The only thing in this case more clear than the terms of the bonus fee provision are the terms of the RRA. In exchange for a lump sum of $25,000, JVF agreed to "release[], remit[] and forever discharge" Blanchard "of and from *any and all rights… remedies or causes of action of whatever nature,* which it or they now have, or which it or they . . . may hereafter acquire, for fees, damages, losses costs and expenses *of whatever kind or nature and however arising,* except Jones does not release Blanchard for a *bonus*, if any, attributable to [the bonus fee provision of the Fee Agreement]." (RRA, p. 1) (emphasis added). By its arguments, JVF seeks somehow to find a loophole

in this remarkably comprehensive language. The Court is not persuaded that any claims other than those for the bonus fee provision survived the RRA.

In light of the unambiguous terms of the RRA, settling *all* claims except for those related to the bonus fee provision, the Court finds that the cross summary judgment motions at issue here concerned the only claim still outstanding in this case. Since the Court finds Blanchard's motion meritorious, this ruling disposes of all of JVF's claims against Blanchard.

New Orleans, Louisiana, this 15th day of March 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE